IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, 1625 L Street NW, Washington, DC 20036 | COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF |
| Plaintiff | Civil Case No. 1:20-cv-421 |
| v. | |
| EUGENE SCALIA, in his official capacity as Secretary of Labor, 200 Constitution Avenue NW, Washington, DC 20210 | |
| and | |
| JOHN P. PALLASCH, in his official capacity as Assistant Secretary for Employment and Training, 200 Constitution Avenue NW, Washington, D.C. 20210 | |
| and | |
| UNITED STATES DEPARTMENT OF LABOR, 200 Constitution Avenue NW, Washington, DC 20210 | |
| and | |
| UNITED STATES EMPLOYMENT AND TRAINING ADMINISTRATION, 200 Constitution Avenue NW, Washington, DC 20210 | |
| Defendants. | |

## **COMPLAINT**

The American Federation of State, County and Municipal Employees, AFL-CIO, by and through its undersigned attorneys, alleges as follows:

1

**INTRODUCTION**

1.       For over eighty-seven years, beginning with its enactment, the Wagner-Peyser Act of 1933, 29 U.S.C. §§ 49, *et seq*. ("Wagner-Peyser" or the "Act"), has required  states to administer their Wagner-Peyser funded employment services ("ES" or "Employment Services") programs through the employ of public employees under a merit system (the "merit system requirement").

2.       The merit system requirement has been set forth in an unbroken line of regulations issued by the Secretary of Labor beginning in 1938, and also by the federal Office of Personnel Management ("OPM") after Congress enacted the Civil Service Reform Act ("CSRA") amending the Intergovernmental Personal Act of 1970 ("IPA"), and again following the adoption of the Workforce Investment Act of 1998 ("WIA").

3.       Under those statutes, the merit system requirement, acknowledged as a statutory requirement, has been reaffirmed and ratified by Congress multiple times through the past century and into the current one.

4.       Nonetheless, on January 6, 2020, for the first time in the Act's history, the Department of Labor through its sub-cabinet agency the Employment Training Administration issued a final regulation titled "Wagner-Peyser Act Staffing Flexibility" that purports to eliminate the longstanding merit system requirement. *See* 85 Federal Register No. 3, pp. 592-630 (the "Final Rule").

5.       Plaintiff, the American Federation of State, County and Municipal Employees ("AFSCME") is a membership association and labor union whose membership includes individuals employed by various state Employment Services agencies and funded under Wagner-

Peyser grants-in-aid. These members' federal guarantee of merit system protections has now been abolished by the Final Rule.

6.    Because the Final Rule violates the statutory provisions of Wagner-Peyser and other laws, and/or because it is the result of an arbitrary and capricious process of rulemaking, it fails to comply with the Administrative Procedures Act, 5 U.S.C. §§500, *et seq.* ("APA") and is invalid.

## JURISDICTION

7.    This Court has subject matter jurisdiction under 28 U.S.C. §1331 because Plaintiff's action arises under the Constitution and laws of the United States, and under 5 U.S.C. §702 and §704 because Plaintiff's members have suffered a legal wrong and are adversely affected by a final agency action for which there is no other adequate judicial review.

## VENUE

8.    Venue is proper in this Court under 28 U.S.C. §1391(e), as this action involves an agency action promulgated within this district, and plaintiff resides in this district.

## PARTIES

9.    Plaintiff AFSCME is an unincorporated membership association and a labor organization, whose membership includes individuals employed by various state Employment Services agencies and whose interest is directly impacted by the Final Rule. AFSCME exists for the purpose of preserving and improving the terms and conditions of its members' employment through multiple venues and avenues, including through collective effort, collective bargaining, legislative advocacy, policy programs, and in courts and administrative tribunals. AFSCME sues in its own and its members interests.

10.    Defendant U.S. Department of Labor ("DOL") is a department and agency of the United States government.

11.     Defendant Employment and Training Administration is an agency within the DOL that is responsible for, among other things, administering the national ES program established by Wagner-Peyser.

12.     Defendant Eugene Scalia is the Secretary of Labor and is sued in his official capacity.

13.     Defendant John P. Pallasch is Assistant Secretary for Employment and Training, responsible for administering the Employment and Training Administration, and is sued in his official capacity.

## FACTUAL ALLEGATIONS

### A. The Wagner-Peyser Act and Merit System Protections for Employment Services Personnel

14.     Enacted in 1933, the Wagner-Peyser Act funded the transformation of state and local Employment Services offices into a national unified public labor exchange system administered by state merit staff or state civil service employees. 29 U.S.C. §49, *et seq*.

15.     Enacted during the Great Depression, Wagner-Peyser's purpose was to enable unemployed workers and other job seekers to find suitable employment through a national labor exchange of public employment service offices. 29 U.S.C. §49. Prior to Wagner-Peyser, the employment service system in the states was unreliable, fragmented, uncoordinated, and relied on private and local agencies that were ineffective, exploitative, and often corrupt.

16.     Before passage of Wagner-Peyser, the federal ES system was civil-service based. After the passage of the Act, states used one of three methods to employ ES personnel. States with  their own civil service laws hired employees in accordance with their state law and implementing rules and regulations, states without civil service laws but with merit systems established by their state administrative agency used their established merit system for their ES

4

employees, and states without either a civil service or merit system utilized the merit system of the Federal Service for their employment system. *See* Rules and Regulations Relating to the Cooperation of the United States Employment Service and States in Establishing and Maintaining a National System of Public Employment Offices, 3 Fed. Reg. 1470, 1471 (June 22, 1938). From its beginning, Wagner-Peyser required the same rigor of civil service and merit staffing in the new "federal-state" intergovernmental ES system as a condition for states to receive federal grants-in-aid. Since passage of the Act, the state-based merit staffing requirement has been applied continuously through both "federal" and "federal-state" methods for the delivery of state ES programs.

17.    State ES programs are federally funded, primarily through appropriations derived from the Federal Unemployment Tax Act through employer payroll taxes but are administered by state agencies and delivered through local offices of that state agency.

18.    State civil service/merit employees administered the states' ES program until 1942 when they were nationalized during the Second World War (in order to ensure proper allocation of surplus labor to the war effort). This transfer to the federal government allowed the federal government to bear the entire cost of the states' ES programs. After the war, Congress returned the authority to the states in 1946 to administer their ES programs. Throughout all of this, the employees who provided Employment Services were guaranteed merit or civil service protections.

19.    Since passage of Wagner-Peyser, a merit system of personnel administration is – and always has been -- a system of public sector workers employed as a civil service or under a merit system, whose employment and advancement is based on objective merit principles. From

1933 until the present, ES employees have been public sector workers employed by states or, during the Second World War, by the federal government.

20. In 1950 Congress amended Wagner-Peyser to include Hawaii, Alaska, Puerto Rico and the Virgin Islands in the definition of "States" in Section 3(b) of the Act, and granted the Secretary the authority to certify payments for their ES programs as long as they remained in compliance with the Act (P.L. 81-755, Sept. 8, 1950), which necessarily included the merit system requirement.

**B. Early Application of Wagner-Peyser by U.S. Department of Labor**

21. Since its inception, the DOL has always required state public employees working under state civil service laws, state merit personnel systems, or the federal civil service, to administer the states' ES programs.

22. From the very early years after the after passage of Wagner-Peyser, the DOL refused to release funds to states, *e.g*., Iowa and Missouri, in 1935, until they ensured their ES programs were being run by state civil service or merit system staff employees.

23. In the 1990's, DOL refused to release grants-in-aid funds to the State of Michigan when it sought approval, and attempted to implement, an ES Program using non-civil service or merit system employees.

24. Following a brief period in which the Secretary of Labor authorized, without authority or Congressional approval, certain limited demonstration projects that resulted in a single non-public local administrator, the DOL issued a Final Rule on August 11, 2000, that forbade any further "demonstration projects" as unauthorized by Wagner-Peyser.

### C. Intergovernmental Personnel Act (IPA) of 1970

25. For its part, since Wagner-Peyser was enacted, Congress has made clear that the use of federal merit system or civil service standards is required for ES personnel.

26. The Intergovernmental Personnel Act of 1970 ("IPA"), 42 U.S.C. §§4701, *et seq.*, requires the use of merit systems by local and state governmental personnel executing federally funded programs, including Wagner-Peyser funded programs. *See* 42 U.S.C. §§4701, 4721 & 4728.

27. When Congress enacted the IPA, it made this merit system requirement perfectly clear, setting forth in Section 2 of the IPA an express statement of policy:

> The Congress hereby finds and declares—
> That effective State and local governmental institutions are essential in the maintenance and development of the Federal system in an increasingly complex and interdependent society.
> That, since numerous governmental activities administered by the State and local governments are related to national purpose and are financed in part by Federal funds, a national interest exists in a high caliber of public service in State and local governments.
> That the quality of public service at all levels of government can be improved by the development of systems of personnel administration consistent with such merit principles as… .

42 U.S.C. §4701 (Pub. L. 91–648, § 2, Jan. 5, 1971).

28. Subchapter II of the IPA also begins with the stated purpose to "assist State and local governments to strengthen their staffs by improving their personnel administration." 42 U.S.C. §4721.

29. Specifically, the IPA authorized the federal Civil Service Commission (later replaced by the Office of Personnel Management ("OPM")) to prescribe merit system standards to state and local governments in their performance of federally funded employment service programs. Thus, section 208 of the IPA, 42 U.S.C §4728, transferred to the Commission "all

7

functions, powers, and duties" with respect to enumerated statutes providing for civil service or merit system requirements on the part of states, including, at subpart (a)(2)(A) "the Act of June 6, 1933, as amended (29 U.S.C. 49 *et seq.*)", *i.e.*, Wagner-Peyser. The IPA ascribed to the Commission such authority insofar as it related to merit system standards but not insofar as it relates to other subjects of the enumerated statutes.

### D.  The Civil Service Reform Act of 1978

30.     In 1978 Congress enacted the Civil Service Reform Act ("CSRA"), a major legislative reform that, among other things, abolished the U.S. Civil Service Commission and distributed its functions among three new agencies: OPM, the Merit Systems Protection Board and the Federal Labor Relations Authority.

31.     In adopting the CSRA, Congress amended the IPA and, in doing so, again made perfectly clear its intent that merit system guarantees for public employees are to remain a condition of Wagner-Peyser grants-in-aid funding to states. Specifically, although subsection (b) was added to 42 U.S.C. §4271 providing federal agencies "*may* require as a condition of participation in assistance programs" personnel standards, it also added subsection (h) which ensured certain statutes, including Wagner-Peyser, would continue to require merit system requirements:

> (h) Effective one year after the date of the enactment of the Civil Service Reform Act of 1978, all statutory personnel requirements established as a condition of the receipt of Federal grants-in-aid by State and local governments *are hereby abolished, except—*, (1) requirements prescribed under laws and regulations referred to in subsection (a) of this section;

*See* PL 95–454 (Oct. 13, 1978), 92 Stat 1111 (emphases added). As noted above, section (a)(1) specifically includes the Wagner-Peyser Act, and so by mandating the abolition of certain merit

8

system requirements while continuing to require others, Congress confirmed the merit system requirement for Wagner-Peyser funded personnel (among others).

### E. The OPM Regulations

32. Following adoption of the CSRA, the OPM was established and began the development and promulgation of the merit system standards required under the IPA as amended by the CSRA.

33. The OPM's first merit system standards regulations issued in 1983. 48 Federal Register No. 44, p. 9210, 9211 (March 4, 1983), 5 C.F.R. §§900.600, *et seq*. In that regulation OPM set forth, in Appendix A, the three categories of grant-in-aid programs based on the source of each category's merit system requirement: Statutory, Regulatory and Programmatic. Wagner-Peyser is listed in the first category, that is programs that "have a *statutory* requirement for the establishment and maintenance of personnel standards on a merit basis." *Id*. (emphasis added).

34. In 1997, OPM revised Appendix A "to reflect changes in laws and regulations that have occurred since 1983 when the list of pertinent laws and regulations was last revised." *See* 62 Federal Register No. 121, pp. 33971-72 (June 24, 1997). The revised Appendix A continued to list, as it must, Employment Services funded under the Wagner-Peyser Act, and still does despite being revised in other respects since 1997. *E.g*. 79 Federal Register No. 145, p. 43919, 43923 (July 29, 2014).

### F. The Workforce Investment Act of 1998

35. Congress' next significant amendment to Wagner-Peyser was in 1998, with the Workforce Investment Act of 1998 ("WIA"). Significantly, Congress made no changes with respect to its earlier mandate that Wagner-Peyser funded services be performed by public personnel covered by a merit system. This is significant because the WIA codified a "One-Stop"

9

delivery system of services that brought ES, unemployment insurance, and job training services into an integrated state-administered service delivery system (while maintaining their distinct statutory funding streams and enabling statutes).

36.    Under the WIA's integrated system, ES personnel were to be maintained as public employees in accordance with the merit system requirement.

37.    In accordance with the WIA's statutory mandate to issue implementing regulations, the DOL issued a final rule on August 11, 2000, setting forth the implementing regulations for the WIA including its Wagner-Peyser provisions. That regulation responded to inquiries posed during the APA-required notice-and-comment period that asked if states may seek a waiver of the merit staffing requirement for its ES programs. The DOL specifically stated:

> Our authority to waive Wagner-Peyser provisions is limited to requirements under sections 8 through 10 of the Act. The requirement that Wagner-Peyser Act services be provided by State merit staff employees derives from sections 3 and 5(b)(1) of the Wagner-Peyser Act. Accordingly, we do not intend to, *nor do we have authority to entertain or grant waivers of the Wagner-Peyser Act merit staffing requirement.*

65 Federal Register No. 156, p. 49306, Aug. 11, 2000; 20 C.F.R. Part 652 *et al*. (emphasis added).

38.     Prior to WIA, in the 1990s, the DOL had entertained limited requests to establish local demonstrations projects for ES service in three states. These limited experiments, which in at least one instance waived a public employee merit system requirement, were not the product of formal regulatory action or any specific statutory authority. The August 11, 2000, WIA implementation regulation further made clear that the DOL could not lawfully authorize such demonstrations involving waivers of the merit system requirement. *Id.* at 49464.

10

### G. The DOL's 2006 Proposed Rule and Congress' Response

39.      In 2006, the DOL issued a Notice of Proposed Rulemaking (NPRM) which sought comment on a potential rule change that would eliminate the merit system requirement for Wagner-Peyser funded Employment Services. *See* 71 Federal Register No. 244, pp. 76558–69 (Dec. 20, 2006). Congress reacted swiftly, by disallowing the use of any Wagner-Peyser, Workforce Investment Act, and Trade Adjustment Assistance funds to finalize or implement the proposed rule change. *See*, *e.g.*, Revised Continuing Appropriations Resolution, 2007, Pub.L. No. 110-5, Section 20601,121 Stat. 8, 28-29(2007) (revised).

40.      Congress again blocked the proposed rule change in 2008. *See* Consolidated Appropriations Act, 2008, Pub. L. 110-161.

41.      Thereafter, the DOL announced the withdrawal of the proposed rule. 74 Federal Register No. 74, pp. 41815-816 (August 19, 2009).

### H. The Workforce Innovation and Opportunity Act

42.      In 2014 Congress passed the Workforce Innovation and Opportunity Act ("WIOA"). The WIOA consists of five Titles, with Title III containing amendments to Wagner-Peyser. These amendments require that ES programs offered in the One-Stop system be physically located with the other services provided in One-Stop centers, rather than merely requiring the programs to be "coordinated."

43.      Notably, Congress made no changes to the provisions of Wagner-Peyser, or either the IPA or CSRA, or to any of the regulations, requiring merit system staffing. Congress, did, however, permit the Secretary of Labor to grant waivers on a local basis to certain provisions of Wagner-Peyser (section 8-10), none of which are pertinent to the merit system requirement. *See, e.g.* 20 C.F.R. § 679.630.

11

## I.    The 2020 "Wagner-Peyser Act Staffing Flexibility" Final Rule

44.    Despite Congress reiterating, ratifying and reenacting the Wagner-Peyser merit system requirement, and despite the longstanding acceptance and reliance on Wagner-Peyser's merit system requirement across an eighty-seven year history, on June 24, 2019, Defendants issued a notice of proposed rulemaking followed by the January 6, 2020 Final Rule purporting to abolish the merit system requirement. 84 FR 29433, pp. 29433-55; 85 Federal Register No. 3, pp. 592-629.

45.    The Final Rule is contrary to statute and invalid.

46.    Alternatively, as detailed further below in Plaintiff's Second Claim for Relief, the Final Rule's promulgation is the result of arbitrary and capricious rulemaking because, among other things, the Defendants:

    a.   employed a flawed and unsupportable cost-benefit analysis;

    b.   relied on incomplete and erroneous findings with respect to merit systems;

    c.   failed to evaluate disparate impacts of their rule making;

    d.   neglected to consider longstanding reliance interests;

    e.   failed to ensure or give due consideration to Wagner-Peyser's mandate to ensure national uniformity in the provision of employment services or Congressional policy under the IPA and CSRA; and

    f.   failed to provide sufficient evidence of changed circumstances to permit a reversal of the longstanding merit system requirement.

47.    Accordingly, the Final Rule is invalid as an arbitrary and capricious regulation.

12

### J.  Plaintiff's Complaint is Appropriate for Adjudication

48.    The Final Rule constitutes a final agency action within the meaning of the APA and Defendants are subject to the requirements of the APA.

49.    Wagner-Peyser established the Employment Service for, among other things, the purpose of professionalizing the delivery of employment services, establishing a uniform, national structure for the delivery of such services, to ensure the individuals performing such services are free from political influence and are selected and advanced on the basis of objective standards of merit.

50.    AFSCME's members, employed in the various Wagner-Peyser funded and administered state Employment Services, consist of the professional staff of such Employment Service offices, and are therefore within the zone of interests governed by the Wagner-Peyer Act, the Intergovernmental Personnel Act, and the Civil Service Reform Act, and the regulations that have been adopted thereunder.

51.    AFSCME challenges the Final Rule as unauthorized by law and, alternatively, as an arbitrary and capricious exercise of agency rulemaking.

52.    Because the Final Rule requires no further exercise of discretion by the Defendants, judicial intervention is necessary and appropriate.

53.    Through the adoption of the Final Rule, the Defendants have abolished a longstanding guarantee and/or prohibition on the part of state ES personnel.

54.    Through the Final Rule, the Defendant agencies have crystalized their position so that the Final Rule has a direct, meaningful and immediate impact on Plaintiff's members with respect to their guarantee of merit system protections.

55.     The Final Rule is final agency action subject to judicial review because it marks the "consummation of the . . . decisionmaking process" and is one "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotation marks omitted).

56.     The Final Rule upends settled reliance interests, namely that the ES personnel, including AFSCME members, are to be secured merit system protections under federal law.

57.     Because this suit presents a question of law, a delay in determination of the purely legal questions presented by Plaintiff will work a hardship to Plaintiff and its members, as well as interested states and state-level agencies that are obligated to lawfully administer Wagner-Peyser funded Employment Services. Indeed, to the extent any state or state entities seek to avail themselves of the Final Rule in a manner that conflicts with the merit system requirement, and have or will expend resources to do so, any such actions will be clouded until Plaintiff's challenge is resolved.

## FIRST CLAIM FOR RELIEF
### (Violation of APA: 5 U.S.C. §706 -- Not in Accordance with Law)

58.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

59.     Defendants' interpretation of Wagner-Peyser, the IPA and CSRA, on which they premise the Final Rule, is not in accordance with law, as set forth above.

60.     A merit system of personnel administration under Wagner-Peyser requires public employment through a civil service or merit system.

61.     Wagner-Peyser established a system of state employment offices staffed by state agency personal covered by civil service or merit system rules. "Merit System" and "Civil Service" are personnel terms exclusive to public sector employment. The IPA and CSRA ratified

14

that requirement. Thereafter, the WIA left in place these requirements, and the WOIA confirmed this requirement by amending Wagner-Peyser's definitional section to require ES services to be provided through "employment services offices" defined as a "local office of a State agency."

62. With the exception of the 2006 DOL proposed rule, which was blocked by Congress and then withdrawn, the DOL has been consistent in its affirmance of Wagner-Peyser's merit staffing requirement. Likewise, OPM has consistently affirmed Wagner-Peyser's statutory merit system requirement.

63. The Final Rule is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because it is based on an erroneous interpretation of the Wagner-Peyser Act.

64. Because the Final Rule is not in accordance with, and conflicts with Wagner-Peyser, the Intergovernmental Personnel Act and the Civil Service Reform Act, it must be invalidated.

## SECOND CLAIM FOR RELIEF
### (Violation of 5 U.S.C. § 706(2)(A) – Procedurally Improper Rulemaking)

65. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

66. The APA prohibits arbitrary and capricious agency action.

67. The requirement that agency action not be arbitrary and capricious includes a requirement that the agency explain its result and respond to relevant and significant public comments.

68. The requirement that agency action not be arbitrary and capricious means that the agency must articulate a reasoned basis for its decision, and its action cannot be founded upon unsupported assertions or unstated inferences.

15

69.    The requirement that agency action not be arbitrary and capricious includes a requirement that the agency explain its result and respond to relevant and significant public comments.

70.    The Final Rule, however, was based on a deeply flawed cost-benefit analysis that did not account for the many costs which result from the provision of poorer service, erroneously estimated higher wages and compensation for public-sector workers than for those in the private sector, failed to compare public-sector workers with those similarly situated in the private sector, and relied on inappropriate data and questionable underlying assumptions. The DOL's response in the Final Rule to criticism of its cost-benefit analysis was to substitute updated data from the sources relied upon in the NPRM, while following the flawed methodology used in the proposed rule. This revision alone reduced the estimated total savings per year by more than 76 percent.

71.    The Final Rule also mischaracterized the findings of the only existing evaluation of merit-based systems in the Employment Service: a five-year study showing that privatization was less cost-effective than using merit-based personnel. Defendants' mischaracterization of the study on which they rely renders their rule making arbitrary and capricious.

72.    The Final Rule also provides no reasoned basis for the loss of uniformity it will cause among he states in administrative and statistical procedure, by allowing states to choose between privatized, non-merit, or merit-based systems. This will result in an inconsistent patchwork of implementation from one state to the next, contrary to the DOL's obligation under Wagner-Peyser to promote uniformity in the states' administrative and statistical procedure under, *inter alia*, 29 U.S.C. § 49b(a).

73.    The DOL's violation of the statutory merit system requirement changes the agency's eighty-seven-year application of Wagner-Peyser as requiring the use of merit-based

16

staffing. This long-accepted application has engendered significant reliance interests in merit systems that the Final Rule does not take into account, and changes to such longstanding interpretations require close scrutiny.

74.    The Final Rule also fails to respond to comments that raised serious flaws in the DOL's reasoning and provided important data bearing on its decision.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court:

1.    Enter a preliminary injunction enjoining Defendants from implementing the Final Rule;

2.    Enter a declaratory judgment that the Final Rule is not in accordance with law, arbitrary and capricious and therefore invalid;

3.    Enter a permanent injunction prohibiting Defendants from implementing or otherwise giving effect to the Final Rule;

4.    Award Plaintiff its costs and expenses, including reasonable attorneys' fees; and

5.    Award such further and additional relief as is just and proper.

Respectfully submitted,

*/s/ Judith E. Rivlin*

**AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES**
Judith E. Rivlin (D.C. Bar No. 305797)
Teague P. Paterson (D.C. Bar No. 144528)*
Margaret A. McCann (D.C. Bar No. 432379)

*\*lead attorney to be noticed*

1625 L Street NW
Washington, DC 20011
Tel: (202) 775-5900; Fax: (202) 452-0556
jrivlin@afscme.org; tpaterson@afscme.org;
mmcann@afscme.org